# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RONALD ADAMS,

                Plaintiff,

   v.

JAMES TILTON, et al.,

                Defendants.

_____/

CASE NO. 1:07-cv-00791-GSA PC

ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE

(Doc. 18)

## Screening Order

Plaintiff Ronald Adams is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to his own motion, plaintiff filed a Second Amended Complaint on December 10, 2007. Plaintiff consented to jurisdiction by a U.S. Magistrate Judge on May 2, 2007.

## I.  Screening Requirement

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

///

1

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## II.   Plaintiff's Claims

### A.   Plaintiff's Complaint, in General

In his lengthy, vague, and often confusing second amended complaint, plaintiff both provides extensive detail regarding his May 23, 2005, altercation with correctional officers and its aftermath, and omits other details, such as the nature of the grievance(s) that defendant Altnow refused to process and the context for plaintiff's altercation with defendant Moore, including prior staff complaints and the nature of the bad blood between Moore and plaintiff. Plaintiff then asserts at least fourteen causes of action, none of which is specifically tied to the factual allegations preceding them and about half of which are not cognizable in a § 1983 action.

If plaintiff chooses to amend the complaint again, as he is permitted to do pursuant to this order, he must correlate his claims for relief with the factual basis underlying each one, demonstrating specifically how the conditions of which he complains have resulted in each deprivation of plaintiff's constitutional rights.  To accomplish this objective, plaintiff may find it helpful to reorganize his complaint to set forth each claim individually, followed by the relevant supporting allegations.  Organizing the complaint in this way may also assist plaintiff in identifying and removing irrelevant or unnecessary factual allegations and duplicative or unsupported causes of action.  By simplifying and shortening his complaint, plaintiff will enable the court to evaluate his claims and the facts supporting each one.  Plaintiff's third amended complaint may not exceed twenty-five pages.

Plaintiff is reminded that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to § 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action,

1   supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129

2   S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

3   "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is

4   plausible on its face.'" Iqbal, 129 S.Ct. at 1949, quoting Twombly, 550 U.S. at 555.  While

5   factual allegations are accepted as true, legal conclusions are not.  Ibid.

6        Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to

7   relief above the speculative level." Id. at 555 (citations omitted).  A plaintiff must set forth "the

8   grounds of his entitlement to relief," which "requires more than labels and conclusions, and a

9   formulaic recitation of the elements of a cause of action." Id. at 555-56 (internal quotation

10  marks and citations omitted). To adequately state a claim against a defendant, plaintiff must set

11  forth the legal and factual basis for his claim.

12        In screening a complaint, a court may dismiss a complaint only if it is clear that no relief

13  could be granted under any set of facts that could be proved consistent with the allegations.  Id. at

14  514.  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

15  entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings

16  that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d

17  750, 755 (9th Cir. 2003), quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Austin

18  v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the

19  opposing party on notice of the claim . . . .'"), quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th

20  Cir. 2001).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

21  allegations." Neitzke v. Williams, 490 U.S. 319, 330 n. 9 (1989).  "[A] liberal interpretation of a

22  civil rights complaint may not supply essential elements of the claim that were not initially pled."

23  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997), quoting Ivey v. Bd. of

24  Regents, 673 F.2d 266, 268 (9th Cir. 1982).

25        Finally, the court would be remiss if it failed to comment on the tone of plaintiff's

26  complaint, which suggests that several of plaintiff's claims may be motivated by a desire to

27  discipline or embarrass correctional officers who plaintiff believes may have violated prison rules

28  or regulations, demonstrated poor judgment, or revealed unsavory or idiosyncratic personal

3

1  characteristics.  Plaintiff is reminded that the purpose of a § 1983 action is to vindicate plaintiff's

2  constitutional rights, not to provide a forum for attacking prison personnel.

3        **B.      Summary of Complaint**--**Underlying Facts**[1]

4        Plaintiff attributes the incident giving rise to this action to the fall-out from an outdated

5  appliance form.  Inmates complete appliance forms to order appliances through the prison

6  property office.  As plaintiff explains the procedure, the warden's signature is printed on them as

7  authorization for the inmate's purchase.  When defendant Vazquez was appointed Wasco's

8  warden in 2003, Vazquez had determined to use the existing supply of appliance forms, which

9  bore the name of the prior warden,  before printing new ones bearing her name.   Although the

10 printed supply ran out sometime in 2004, property officers continued to use the outdated form,

11 photocopying it as additional forms were needed.  Because Vazquez had announced her

12 determination to continue to use the outdated forms at a 2004 warden's meeting with Facility A,

13 that the forms still bore the prior warden's name was common knowledge both to inmates and

14 prison personnel.

15       On May 23, 2005, plaintiff, who now resides at Folsom Prison, was an inmate in Facility

16 A at Wasco State Prison ("Wasco").  Noting that the supply of several forms, including appliance

17 forms, was nearly gone, Facility A's building clerk sent plaintiff to the Property Office to obtain

18 additional forms.  Plaintiff carried samples of the forms that were needed.

19       Having been told to wait while defendant Alvidrez, the property officer, obtained forms

20 for him, plaintiff lingered outside the adjacent program office with other waiting inmates.

21 Defendant Moore left the program office and confronted plaintiff, demanding an explanation for

22 his presence.   (Plaintiff and Moore had a history of animosity predating the incident set forth in

23 this complaint.) Hearing plaintiff's explanation, Moore demanded to see the papers that plaintiff

24 carried and announced that the appliance form was a forgery.

25       When plaintiff attempted to explain the continued use of the outdated form and

26 "grab[bed] for his forms back," Moore told plaintiff that he was out of bounds.  Plaintiff replied

27

28        [1] Although the caption includes defendant James Tilton, he is not otherwise mentioned in the complaint.

4

that he wasn't because "it wasn't mark[ed] out of bounds."  Moore then directed plaintiff to turn

and be handcuffed, despite plaintiff's protests that the office was only four feet away and they

could walk in so defendant McEwen could confirm the propriety of plaintiff's form.  After

Moore indicated that plaintiff was about to "make a bad situation worse," plaintiff allowed

Moore to handcuff him.  Moore then cuffed the plaintiff tightly enough to cut off blood

circulation to plaintiff's hands.

Moore escorted plaintiff to a holding cage inside the program office, directly opposite

defendant Berry's office.  As Moore unlocked the cage, defendant DeShields moved in behind

plaintiff as back-up.  Hoping Berry would intervene, plaintiff again complained of the cuffs'

tightness.  Berry did not respond but DeShields pushed plaintiff closer to the wall.  Plaintiff then

yelled for help.  In response, Moore and DeShields threw plaintiff to the floor, with Moore using

his weight to tackle plaintiff.  DeShields repositioned himself to stand on plaintiff's ankles.

Berry and McEwen looked on.  Plaintiff hit his head and lost consciousness.

Plaintiff regained consciousness with five or six officers on top of him, including

defendants Alvidrez, Kitchen, Ellebarcht, and DeShields.  After plaintiff was transferred to the

cage, Berry entered to interview him and removed the handcuffs.  Seeing abrasions and feeling

numbness in his fingers, plaintiff yelled, "Do you see what he has done do you see?"  Berry left

the cage and did not return.  She neither took plaintiff's statement nor photographed his injuries.

In the holding cage, plaintiff, who has schizoaffective disorder,[2] entered an emotional

hyperactive state.  Dr. Trinh, a psychologist, evaluated plaintiff and transferred him to a mental

health crisis bed in the prison hospital, where plaintiff remained from May 23 to 25, 2005.

On May 26, 2005, Berry prepared a medical form 7219 and an administrative segregation

("AD SEG") form which falsely stated that defendant Strong had examined plaintiff on May 23.

Although plaintiff had not filed any grievances or staff misconduct complaints relating to the

---

[2]  Schizoaffective disorder is an illness that includes major depressive, manic, or mixed mood symptoms occurring at the same time as active symptoms of schizophrenia such as delusions, hallucinations, disorganized speech or behavior, or negative symptoms such as flattened affect, alogia, or avolution.  *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision, § 295.70 at 319-323 (American Psychiatric Association 2000).

May 23 incident, Berry's order recited that plaintiff was being transferred to AD SEG pending investigation of his allegations against staff. As a result, plaintiff was first escorted to the Facility A medical office for examination by Strong, a registered nurse, who completed two reports, one dated May 26, 2005, and one back-dated May 23, 2005, both of which reported no abrasions or marks on plaintiff's wrists. Plaintiff was then placed in AD SEG.

On May 27, 2005, plaintiff met with McEwen to review the AD SEG order. When McEwen stated that plaintiff would not have been transferred to AD SEG if he had not alleged staff misconduct, plaintiff protested that he had no opportunity to file any complaint.[3] McEwen then coerced plaintiff into a signed statement and videotape that Moore had not handcuffed him too tightly. That evening, plaintiff was released from AD SEG.

Thereafter, plaintiff received copies of CDC 837 incident reports filed by Moore, Kitchen, Alvidrez, Berry, DeShields, and Ellebracht. Each report stated only that plaintiff had willfully resisted a peace officer, resulting in a use of force. None specified that plaintiff had resisted Moore.

Defendant Borrero, appointed by defendant Johnson, presided over plaintiff's first disciplinary hearing in or about June 2005. Plaintiff objected to proceeding in the absence of defendant Moore, who was the reporting employee. Indicating that Moore was on vacation and not available, Borrero gave plaintiff the choice of proceeding without Moore or waiving his right to a hearing. When plaintiff refused to proceed in Moore's absence, insisting that Moore was not on vacation but on suspension for misconduct, Borrero determined that plaintiff had waived his rights and found plaintiff guilty.

On June 11, 2005, defendant Medina called plaintiff a "Chester," prison slang for a child molester. Although plaintiff has a 1981 rape conviction, it did not involve a minor.

On or about July 6, 2005, Johnson ordered a new disciplinary hearing for plaintiff, noting that Moore had been on vacation. Defendant Gutierrez was assigned to be the hearing officer.

---

[3] Plaintiff provides no information regarding staff complaints that he may have filed before May 23, 2005. In light of plaintiff's disclosure of the longstanding animosity between plaintiff and Officer Moore, the court questions whether McEwen may have intended to refer to a complaint of an earlier incident than the one that forms the basis of this action.

On or about August 14, 2005, defendant Stoddard was assigned to be plaintiff's investigative employee ("I.E."). Plaintiff rejected Stoddard and requested the assignment of a different I.E. On or about August 20, 2005, Gutierrez rejected plaintiff's request for a different I.E. and convened the hearing. When plaintiff indicated his intent to walk out, Gutierrez "exploded and said look you asshole you were not assign no I.E. and if you mention it again I'll get the boys here to kick your fucking ass, do you understand me . . ." (complaint, ¶109). Plaintiff left the hearing room.

Gutierrez followed plaintiff from the hearing room, threw the hearing folder on the ground and attempted to provoke plaintiff to fight. Plaintiff stood face to face with Gutierrez, who was backed by Greer, Judd, Medina, and Moore. Gutierrez stated, "If you were on my fucking yard nobody would see you again. I wouldn't go for your shit of filing 602 staff complaint. You talking back to staff" (complaint, ¶113).

In September 2005, plaintiff filed a staff complaint, charging Moore with using excessive force and Strong with backdating the medical report.

On or about September 27, 2005, plaintiff's disciplinary hearing was again rescheduled. Defendant Scales was assigned as plaintiff's I.E.; defendant Cook was assigned as hearing officer.

Although plaintiff requested that Scales obtain a statement from Property Officer Hormecky regarding the use of the outdated appliance forms, Scales did not do so. Scales told plaintiff that he had been advised by an unidentified sergeant that seeking this information would be unwise.

Scales obtained re-written statements from Berry and Ellebracht. Berry stated that plaintiff attempted to frame Moore through false allegations of force. Ellebracht stated that plaintiff had thrown his head against the wall in an attempt to injure himself and frame Moore.

Cook refused to call Hormecky or Vazquez as witnesses, finding their testimony irrelevant. He found plaintiff guilty of willfully resisting a peace officer, assessing sixty-one days forfeiture of credits with a Division D offense classification and added six points to plaintiff's placement score level.

1   Plaintiff alleges that defendant Altnow failed to file plaintiff's complaint against Moore

2   and requested that plaintiff be put on appeal restriction.

3   **C.   Section 1983 Action or Habeas Corpus Petition?**

4   Among other relief, plaintiff requests expungement of the disciplinary action, which

5   included his forfeiture of sixty-one days credit and the loss of six placement points.  The only

6   remedy in federal court for prisoners seeking restoration of good time credits is habeas corpus.

7   Preiser v. Rodriquez, 411 U.S. 475, 500 (1973).  "[T]he essence of habeas corpus is an attack by

8   a person in custody upon the legality of that custody, and . . . the traditional function of the writ is

9   to secure release from illegal custody."  Id. at 484.

10   "[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or

11   duration of his confinement.'"  Wilkinson v. Dotson, 544 U.S. 74, 78 (2005), *quoting* Preiser,

12   411 U.S. at 489.  Nor can a prisoner claim damages under § 1983 if a judgment in his favor

13   would "necessarily imply" that his conviction or sentence was invalid unless the conviction or

14   sentence was previously invalidated.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  *See also*

15   Edwards v. Balisok, 520 U.S. 641, 646-47 (1997).  If a prisoner's claim would invalidate his

16   sentence or conviction, the prisoner must pursue appropriate state relief or federal habeas corpus

17   relief for that claim.  Wilkinson, 544 U.S. at 78.  "[A] state prisoner's § 1983 action is barred

18   (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the

19   target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if*

20   success in that action would necessarily demonstrate the invalidity of confinement or its

21   duration."  Id. at 81-82.

22   Some claims that plaintiff raises in this action are appropriately brought in a § 1983

23   action, since providing relief for those claims does not challenge the validity of the conviction or

24   sentence.  For example, remedies for constitutional claims concerning conditions of confinement

25   do not challenge the fact or length of custody.  *See* Preiser, 411 U.S. at 499.  On the other hand,

26   those that do challenge the length or fact of plaintiff's confinement, including the revocation of

27   good conduct credits, are properly addressed through a habeas petition and are not cognizable in

28   this suit.  In particular, claims that allege inappropriate procedure in a disciplinary hearing must

8

be brought in a habeas petition, since a finding of invalid procedures would invalidate the revocation of the good time credits that resulted from the hearing.  *See* <u>Edwards</u>, 520 U.S. at 646-47.

When a prisoner brings multiple claims, addressing both conditions of confinement and the fact or length of confinement, the prisoner can simultaneously litigate the conditions of confinement claims in a § 1983 action and the other claims in a separate habeas petition.  <u>Preiser</u>, 411 U.S. at 499 n. 14.  *See also* <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 681-82 (9th Cir. 1984).  Accordingly, this court will allow plaintiff's action to proceed with regard to the conditions-of-confinement claims, but will dismiss without prejudice those claims that must be addressed in habeas proceedings.  *See* <u>Edwards</u>, 520 U.S. at 649; <u>Heck</u>, 512 U.S. at 487; <u>Blueford v. Prunty</u>, 108 F.3d 251, 255 (9th Cir. 1997); <u>Trimble v. City of Santa Rosa</u>, 49 F.3d 583, 586 (9th Cir. 1995).  The claims that are not cognizable in this § 1983 action include:

### 1.    Conspiracy Claims

A conspiracy claim requires proof of "'an agreement or 'meeting of the minds' to violate constitutional rights," *see* <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2002), *quoting* <u>United Steelworkers of Amer. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989) (*citation omitted*), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy." *See* <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006), *quoting* <u>Woodrum v. Woodward County, Okla.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" <u>Franklin</u>, 312 F.3d at 441, *quoting* <u>United Steel Workers</u>, 865 F.2d at 1541.

Plaintiff alleges two conspiracy claims.  Neither is cognizable in this § 1983 action since each has the capacity to affect the validity of plaintiff's disciplinary determination or the revocation of his credits.

### a.    Berry and Ellebracht's False Statements

Plaintiff contends that defendants Berry and Ellebracht's falsifying their statements for plaintiff's third disciplinary hearing constituted cruel and unusual punishment in violation of the

1   Eighth Amendment (complaint, ¶ 161).  Plaintiff alleges that Berry and Ellebracht each changed

2   their respective testimony to maintain the "green wall of silence."  Plaintiff's claim is more

3   appropriately be evaluated as charging conspiracy.

4                              **b.    Code of Silence**

5          Plaintiff contends that defendants Johnson, Borrero, Berry, Allen, Cook, Gutierrez,

6   McEwen, Strong, Altnow, and Vazquez acted under a "code of silence," violating plaintiff's

7   First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights (complaint, ¶166).  Because

8   the "code of silence" is an agreement to withhold negative information about fellow correctional

9   officers from the disciplinary tribunal, it too is properly evaluated as a conspiracy.

10                          **2.    Due Process Violations**

11         The Due Process Clause protects prisoners from being deprived of liberty without due

12  process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  To state a cause of action for

13  deprivation of due process, a plaintiff must first establish the existence of a liberty interest for

14  which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or

15  from state law.  Wilkinson v. Austin, 545 U.S. 209, 222 (2005). "[S]tates may under certain

16  circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v.

17  Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state laws are "generally

18  limited to freedom from restraint which, while not exceeding the sentence in such an unexpected

19  manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless

20  imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

21  prison life."  Id. at 484 (*citations omitted*).  A plaintiff possesses a liberty interest in his time

22  credits.  *See* Id. at 477-78; Wolff, 418 U.S. at 557.

23         Once the existence of a protected liberty interest has been established, the inquiry turns to

24  what procedural process was due.  "Prison disciplinary proceedings are not part of a criminal

25  prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."

26  Id. at 556.  The following minimum procedural protections must be met in prison disciplinary

27  proceedings: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner

28  receives written notice and the hearing, to enable the prisoner to prepare his defense; (3) a written

statement by the fact finders of their reason(s) for imposing disciplinary action and the evidence on which they relied; (4) the right of the prisoner to call defense witnesses so long as it does not endanger institutional safety or impair correctional goals; and (5) legal assistance to the prisoner if the prisoner is illiterate or if the legal issues to be presented are complex.  Id. at 563-71.

Because the due process violations generally have the potential to affect the validity of a judgment, determination, or sentence, plaintiff's due process claims, with the exception of his claim against defendant Altnow discussed in ¶ D6 infra,  are not cognizable as part of a § 1983 action, but must be advanced in a habeas petition.  Accordingly, none of the following claims may be brought in this action:

### a.   Failure to Dismiss Disciplinary Hearing in Moore's Absence (Borrero)

Plaintiff contends that since Moore was the complaining officer, defendant Borrero violated plaintiff's Fourteenth Amendment right to due process by failing to dismiss the disciplinary charges against him in Moore's absence (complaint, ¶ 154).

### b.   Order for Rehearing (Johnson)

Similarly, plaintiff contends that defendant Johnson violated his due process rights by ordering a rehearing of plaintiff's disciplinary hearing (complaint, ¶155).  Plaintiff further alleges that Johnson's order mischaracterized Moore's absence as "vacation."

### c.   Proceeding in Absence of Investigative Employee (Gutierrez)

Prior to the rehearing of plaintiff's rules violation before defendant Gutierrez, plaintiff rejected his assigned IE, requesting another (complaint, ¶156).  Plaintiff alleges that Gutierrez violated plaintiff's rights to due process by proceeding with the hearing before a new IE had been assigned.

### d.   Refusal to Secure Witnesses Identified by Plaintiff (Scales)

In preparation for the second rehearing of plaintiff's disciplinary hearing, Scales was assigned as IE.  Plaintiff alleges that, by refusing to secure statements of witnesses identified by plaintiff, Scales violated plaintiff's due process rights (complaint, ¶159).

///

e.     **Refusal to Call Plaintiff's Witnesses (Cook)**

Plaintiff contends that Cook violated plaintiff's due process rights by refusing to call as witnesses those correctional officers who changed their written statements five months after the incident (complaint, ¶160).

f.     **Failure to Conduct Legal Research (Allen)**

Plaintiff contends that Allen violated plaintiff's due process rights by failing to conduct the legal research necessary to adequately examine plaintiff's appeal (complaint, ¶165).

D.     **Claims Cognizable Under § 1983**

1.     **Eighth Amendment Claims: Excessive Use of Force on May 23, 2005**

Plaintiff alleges multiple claims for excessive use of force against defendants Moore, DeShields, Alvidrez, Kitchen, and Ellebracht, arising out of the May 23, 2005, attack on plaintiff, including both Moore's initial "punitive handcuffing" of plaintiff and all five defendants' assault on plaintiff prior to his being caged (complaint, ¶¶ 151, 152).

**General standard.**  The Eighth Amendment prohibits the infliction of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. *(internal quotation marks and citations omitted)*.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; *see also* Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson. 503 U.S. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship

between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Ibid. (*internal quotation marks and citations omitted*).

**Punitive Handcuffing.**  The May 23, 2005, assault on plaintiff allegedly began with Moore's handcuffing plaintiff.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (*internal quotation marks and citations omitted*).

Plaintiff contends that Moore cuffed him so tightly that his arms were abraded and he lost feeling in his hands.  Under federal notice pleading standards, plaintiff's allegation that Moore handcuffed him tightly enough to injure his wrists and hands is sufficient to state a claim against Moore. Fed. R. Civ. P. 8(a); Swierkiewicz, 534 U.S. at 512-15; Austin, 367 F.3d at 1171; Jackson, 353 F.3d at 754; Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

**Assault in Program Office.**  After Moore handcuffed plaintiff and escorted him to the nearby program office, plaintiff attempted to draw Lt. Berry's attention by complaining loudly. Moore and DeShields responded by tackling plaintiff and pinning him to the floor.  Alvidrez, Kitchen and Ellebacht piled on.  Plaintiff struck his head and lost consciousness.  Once confined to the cage, plaintiff experienced an emotional reaction requiring two days' placement in the prison hospital to address his mental health crisis.  Under federal notice pleading standards, plaintiff's allegations are sufficient to state a claim against defendants Moore, DeShields, Alvidrez, Kitchen, and Ellebracht for the assault incident to plaintiff's placement in the program office cage. Fed. R. Civ. P. 8(a); Swierkiewicz, 534 U.S. at 512-15; Austin, 367 F.3d at 1171; Jackson, 353 F.3d at 754; Galbraith, 307 F.3d at 1125-26.

## 2.    **Eighth Amendment Claim - Failure to Intervene**

Plaintiff alleges that McEwen and Berry witnessed the May 23, 2005, assault in the program office but failed to intervene to prevent an unnecessary use of force (complaint, ¶ 152).

"[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). A supervisor is liable for the constitutional violations of subordinates "if the supervisor . . . knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor's "failure to bring his subordinates under control [can] support liability under §1983." Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003). Supervisors are liable for "their acquiescence in the constitutional deprivation of which a complaint is made." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000).

Liability under § 1983 extends to supervisors only if they had an opportunity to intercede, however. Id. at 1289-90; Robins, 60 F.3d at 1442. Plaintiff alleges that the assault took place outside Berry's office and that he complained loudly of the tightness of his handcuffs so that she would intervene. Both Berry and McEwen were looking on when plaintiff regained consciousness after having been thrown to the floor in the assault. A supervisor's mere suspicion that harm will occur is insufficient to establish an Eighth Amendment violation. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). A prisoner's allegation that a corrections officer watched plaintiff being dragged away by three guards, heard him say he was in pain, and saw part of the guard's beating of the plaintiff was sufficient to allege that the officer must have known that the prisoner was facing the threat of serious injury. Robins v. Centinela State Prison, 19 Fed.Appx. 549, 551 (9th Cir. 2001). Where an assault consisted of three sharp blows to the victim, however, the duration of the assault did not realistically permit an observing officer an opportunity to intervene. See Shepherd v. Crawford, 2009 WL 839943 at *6 (E.D. Cal. March 30, 2009) (No. 1:08-CV-00128-OWW-DLB), quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).

The complaint here does not explicitly address whether Berry and McEwen each had an opportunity to intervene in the assault that occurred in the program office. Accordingly, it fails to state a claim against them. If plaintiff elects to amend his complaint, he must articulate specific facts supporting the proposition that both Berry and McEwen had a realistic opportunity to intervene. See Iqbal,129 S.Ct. at 1949.

3.   **Eighth Amendment Claim - Deliberate Indifference to Medical Needs**

Plaintiff contends that by falsifying plaintiff's medical reports following the assault, defendant Strong violated plaintiff's Eighth Amendment rights (complaint, ¶ 153).   When an inmate's Eighth Amendment claim relates to medical care, the prisoner must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.  Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds*, WMX Technologies, Inc., v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Alleging that Strong manifested deliberate indifference by falsifying plaintiff's medical reports, plaintiff's claim differs from a typical claim alleging denial or deferral of medical treatment or interference with medical care. Deliberate indifference is commonly proved by demonstrating that prison officials denied or delayed access to medical care or interfered with prescribed treatment.  Estelle, 429 U.S. at 104-05.  In typical cases, the defendants' conduct only violates the Eighth Amendment if it unnecessarily and wantonly inflicts pain upon the inmate. Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002).

"A necessary component of minimally adequate medical care is maintenance of complete and accurate medical records." Coleman v. Wilson, 912 F.Supp. 1282, 1314 (E.D. Cal. 1995), *appeal dismissed*, 101 F.3d 705 (9th Cir. 1996).  Inmates are unquestionably harmed by incomplete or inaccurate medical records.  Ibid.  Adequate and accurate medical records are essential to a prison's providing inmates with continuity of medical care.  Burks v. Teasdale, 492 F.Supp. 650, 676 (W.D.Mo. 1980).  Accordingly, in Burks, the inadequate, inaccurate and unprofessional records maintained by the medical service of the Missouri State Penitentiary were constitutionally inform and carried a "grave risk of unnecessary pain and suffering" in violation of the Eighth Amendment.  Ibid.  The Eighth Amendment is violated when incomplete and

inaccurate medical records create a "the possibility for disaster" arising from a lack of necessary information about an inmate's medical history.  Cody v. Hilliard, 599 F.Supp. 1025, 1057 (D.S.Dak. 1984), aff'd, 799 F.2d 447 (8th Cir. 1986), cert. denied, 485 U.S. 906 (1988), quoting Dawson v. Kendrick, 527 F.Supp.1252, 1306-07 (S.D.W.Va. 1981).  See also Nicholson v. Choctaw County, Ala., 498 F.Supp. 295, 309 (S.D.Ala. 1980)("The failure to keep adequate medical records constitutes a danger to the lives and health of inmates.").

In all of the cases cited in the preceding paragraph, however, the Eighth Amendment violations arising from inadequate, incomplete, inaccurate, or misplaced medical records occurred in the context of cases addressing systematic inadequacies in a prison's systems of medical record keeping on behalf of many inmates.  Davis v. Caruso, 2009 WL 878193 at *2 (E.D. Mich. March 30, 2009)(No. 07-CV-11740).  When an individual inmate alleges an Eighth Amendment violation stemming from deficient medical records, he must establish how the error or omission resulted in "a grave risk of unnecessary pain and suffering" to himself.  Id. at 3, quoting Ferguson v. Correctional Medical Services, Inc., 2007 WL 707027 (E.D. Ark., March 1, 2007) (No.5:05-CV-00078).  Because plaintiff does not do so here, he does not state a claim against Strong upon which relief can be granted.

### 4. **Eighth Amendment Claims - Terroristic Threats**

Plaintiff contends that, by threatening plaintiff ("If you were on my fucking yard nobody would see you again "), defendant Gutierrez uttered terroristic threats that violated plaintiff's Eighth Amendment rights (complaint, ¶157).  Plaintiff also contends that defendants Greer, Judd, and Medina[4] made terroristic threats but alleges no factual basis supporting his claim (¶ 158).  "Mere threats" fail to state a cause of action under the Eighth Amendment.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Accordingly, these claims fail as a matter of law.

### 5. **Retaliation**

Plaintiff alleges that "in retaliation against plaintiff," Medina labeled plaintiff a "Chester," or child molester, in front of other inmates, exposing plaintiff the possibility of

---

[4] Judd and Medina were omitted from the caption.

16

violence from other inmates who, according to plaintiff, typically are physically abusive of those convicted of child molestation (complaint, ¶162).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); *see also* Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under § 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also* Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005), *cert. denied*, 549 U.S. 809 (2006); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Both litigating in court and filing inmate grievances are protected activities, and it is impermissible for prison officials to retaliate against inmates for engaging in these activities.  Not every allegedly adverse action will be sufficient to support a claim under §1983 for retaliation, however.  In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff.  Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative

1  segregation for filing grievances); <u>Bruce</u>, 351 F.3d at 1288 (retaliatory validation as a gang

2  member for filing grievances); <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997), *cert. denied*

3  *sub nom.* <u>Pearson v. Hines</u>, 524 U.S. 936 (1998) (retaliatory issuance of false rules violation and

4  subsequent finding of guilt); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory

5  prison transfer and double-cell status in retaliation); <u>Valandingham</u>, 866 F.2d at 1138 (retaliatory

6  labeling of inmate as a "snitch"); <u>Rizzo</u>, 778 F.2d at 530-32 (retaliatory reassignment out of

7  vocational class and transfer to a different prison).

8       Arguably, calling plaintiff a "Chester" in front of other inmates is akin to calling an

9  inmate a "snitch." *See* <u>Valandingham</u>, 866 F.2d at 1138. Both pejoratives potentially expose an

10  inmate to potential harm from other inmates.   In <u>Valandingham</u>, however, the inmate was

11  approached and threatened by other inmates after he was labeled a "snitch." Plaintiff reports no

12  threats or assaults resulting from Medina's calling him a "Chester."

13       Nor does plaintiff identify any protected activity that provoked Medina's name-calling.

14  Plaintiff states only that Medina called plaintiff a "Chester" "in retaliation against plaintiff."

15  This allegation is insufficient to satisfy the second and third elements of retaliation.  A plaintiff

16  must demonstrate "a causal connection between the protected speech and the adverse action."

17  <u>Gill</u>, 389 F.3d at 380.  A conclusory statement that an officer's actions were motivated "for

18  revenge," without factual support establishing retaliation, is insufficient to establish a retaliation

19  claim.  <u>Bouknight v. Shaw</u>, 2009 WL 969932 at *6 (S.D.N.Y. April 16, 2009).  "Prisoners'

20  claims of retaliation must be examined with 'skepticism and particular care,' because they are

21  '[p]rone to abuse since prisoners can claim retaliation for every decision they dislike.'" <u>Ibid.</u>

22  (*citations and some quotation marks omitted).*

23       Plaintiff does not allege that Medina's name-calling chilled plaintiff's exercise of his First

24  Amendment rights.  The 9th Circuit does not require a litigant to prove a total chilling of his First

25  Amendment rights to perfect a retaliation claim.  <u>Rhodes</u>, 408 F.3d at 568.  Retaliatory actions

26  against prisoners who have exercised their First Amendment rights to file prison grievances or

27  federal civil rights suits necessarily undermine First Amendment protections.  <u>Id.</u> at 567.  To

28

establish his retaliation claim, a prisoner need not demonstrate that the defendant actually

inhibited or suppressed his speech. Id. at 569.  This prong requires only that the defendant's

actions "would chill or silence a person of ordinary firmness from future First Amendment

activities." Id. at 568-69, *quoting* Mendocino Environmental Center v. Mendocino County, 192

F.3d 1283, 1300 (9th Cir. 1999) (*citation and quotation marks omitted.)* Allegations of harm

resulting from a defendant's retaliatory act are generally sufficient to satisfy this prong, since

"harm that is more than minimal will almost always have a chilling effect." Rhodes, 408 F.3d at

567 n. 11.

Federal courts must defer to the correctional system's need to maintain order, discipline

and control.  Wolff v. MacDonnell, 418 U.S. 539, 558-562 (1974).   Plaintiff bears the burden of

proving the absence of legitimate correctional goals in the defendants' false disciplinary report.

Pratt, 65 F.3d at 806.  Establishing that a prison official's actions against the plaintiff were

retaliatory and arbitrary and capricious is sufficient to allege that the retaliatory acts lacked a

legitimate correctional goal and were a reasonable exercise of prison authority. Rizzo, 778 F.2d

at 532.  And even if the defendant's retaliatory action had a valid penological purpose in another

context, a valid purpose will not be found if the action was used as a pretext for punishing the

prisoner.  Bruce, 351 F.3d at 1289. Plaintiff does not address whether the name-calling had a

legitimate correctional purpose.

For all of the reasons discussed in this section, the complaint fails to state a cognizable

retaliation claim.

### 6.      Refusal to Process Staff Complaint (Altnow)

Plaintiff contends that his due process rights were violated by defendant Altnow's refusal

to process plaintiff's staff complaints against Moore and by Altnow's request to have appeal

restrictions imposed on plaintiff.  Plaintiff's claim is appropriately evaluated as a violation of his

First Amendment right of access to courts.

Prisoners' constitutional right of meaningful access to the courts has been established

beyond doubt.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  The right extends to prison

1    grievance procedures.  Valandingham, 866 F.2d at 1138.  The First Amendment's right of redress

2    against the government includes redress against administrative arms of government, including

3    prison authorities.  See Soranno's Gasco, Inc., v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

4         A prisoner's grievance rights are not without limits, however.  Prison regulations may

5    validly infringe on the prisoner's right of redress if they are "reasonably related to legitimate

6    penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner, the court identified

7    four factors relevant to determining the reasonableness of a prison rule: "1) whether there is a

8    'valid, rational connection between the prison regulation and the legitimate governmental interest

9    put forward to justify it'; 2) 'whether there are alternative means of exercising the right that

10   remain open to prison inmates'; 3) 'the impact accommodation of the asserted constitutional

11   right will have on guards and other inmates and on the allocation of prison resources generally';

12   and 4) the 'absence of ready alternatives' or, in other words, whether the rule at issue is an

13   'exaggerated response to prison concerns.'"  Bradley v. Hall, 64 F.3d 1276, 1279-80 (9th Cir.

14   1995), quoting Turner, 482 U.S. at 89-90.

15        Because plaintiff provides no information regarding the nature of his staff grievances or

16   of Altnow's actions in denying and limiting plaintiff's filing of grievances, this court is unable to

17   evaluate plaintiff's vague and conclusory claims against Altnow.  Plaintiff fails to state a

18   cognizable First Amendment claim against Altnow.

19                    **7.    Supervisory personnel**

20        Plaintiff alleges that defendant Warden Vazquez is accountable as a supervisor for the

21   actions of all prison personnel (complaint, ¶164).  Supervisory personnel are generally not liable

22   under § 1983 for the actions of their employees under a theory of respondeat superior.  Taylor,

23   880 F.2d at 1045.  For defendants in supervisory positions, a plaintiff must specifically allege a

24   causal link between each defendant and his claimed constitutional violation.  See Fayle v.

25   Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978),

26   cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under § 1983 for supervisory

27   liability, plaintiff must allege facts indicating that each supervisory defendant either personally

28

1  participated in the alleged deprivation of the plaintiff's constitutional rights, knew of the

2  violations and failed to act to prevent them, or promulgated or "implemented a policy so

3  deficient that the policy 'itself is a deprivation of constitutional rights' and is 'the moving force

4  of the constitutional violation.'" <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (*internal*

5  *citations omitted*); <u>Taylor</u>, 880 F.2d at 1045.

6       Because plaintiff candidly bases this claim on Vazquez's supervisory and managerial

7  role, he fails to state a cognizable claim for relief.

8           **8.**    **Claims for Declaratory Relief**

9       Plaintiff seeks a series of declaratory judgments (complaint, relief requested  ¶¶ A1-9).  "A

10  case or controversy exists justifying declaratory relief only when the challenged government

11  activity is not contingent, has not evaporated or disappeared, and by its continuing and brooding

12  presence, casts what may well be a substantial adverse effect on the interests of the petitioning

13  parties." <u>Feldman v. Bomar</u>, 518 F.3d 637, 642 (9th Cir. 2008), *quoting* <u>Headwaters, Inc., v.</u>

14  <u>Bureau of Land Mgmt., Medford Dist.</u>, 893 F.2d 1012, 1015 (9th Cir. 1989) (*internal quotations*

15  *and citation omitted*).  "Declaratory relief should be denied when it will neither serve a useful

16  purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

17  afford relief from the uncertainty and controversy faced by the parties." <u>United States v. State of</u>

18  <u>Wash.</u>, 759 F.2d 1353, 1357 (9th Cir.), *cert. denied*, 474 U.S. 994 (1985) (*citations omitted*).

19       In this instance, plaintiff has an adequate remedy at law.  Should plaintiff file an amended

20  complaint and thereafter prevail on his claims, he is entitled to money damages.  A declaratory

21  judgment would serve no useful purpose and would not terminate the proceedings.  Therefore, this

22  action should proceed as one for damages only.

23           **9.**    **Injunctive Relief**

24       Plaintiff seeks an injunction requiring defendants Vazquez and Johnson (1) to expunge his

25  prior disciplinary actions, (2) to arrange for plaintiff to meet with the Institutional Unit

26  Classification to remove the disciplinary points added to his record, and (3) to reclassify plaintiff

27  from Close B to Medium A custody.   Neither the warden of Folsom Prison, where plaintiff is

28

1   presently incarcerated, nor any other supervisory official possessing the authority to remove

2   information from plaintiff's file and direct that plaintiff's needs with regard to the prosecution of

3   this action be accommodated is a party to this action.  The court is unable to issue an order against

4   individuals who are not parties to a suit pending before it.  <u>Zenith Radio Corp. v. Hazeltine</u>

5   <u>Research, Inc.</u>, 395 U.S. 100 (1969).

6   **III.   Conclusion and Order**

7        Plaintiff's claims against defendants Scales, Cook, Borrero, Johnson, and Allen, as set

8   forth in ¶¶ 154, 155, 156, 159, 160, 161, 165, and 166 of the second amended complaint, must be

9   brought in a petition of habeas corpus. Because plaintiff's claim against defendants Greer,

10  Gutierrez, Judd and Medina for terroristic threats (¶ 157) fails as a matter of law, plaintiff's

11  second amended complaint fails to state a cause of action against these defendants Greer,

12  Gutierrez, and Judd.  The second amended complaint fails to set forth any claim against defendant

13  Tilton.

14       Plaintiff's second amended complaint states claims under the Eighth Amendment against

15  defendants Moore, Alvidrez, Kitchen, Ellebracht and DeShields for use of excessive force.

16  Plaintiff's claims against defendants Strong, for deliberate indifference to plaintiff's serious

17  medical needs; Vazquez, for supervisory liability; Altnow, for refusal to process plaintiff's

18  complaint and for barring plaintiff from filing further complaints; Berry and McEwen, for failure

19  to intervene; and Medina, for retaliation, do not presently state a claim but are subject to further

20  amendment.

21       This court will provide plaintiff with one additional opportunity to file an amended

22  complaint curing the deficiencies identified in this order.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-

23  49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims

24  in his third amended complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no

25  "buckshot" complaints).

26       If plaintiff does not wish to file a third amended complaint and is agreeable to proceeding

27  only on his claims against defendants Moore, Alvidrez, Kitchen, Ellebracht, and DeShields,

28

plaintiff may so notify the court in writing, and the court will enter an order dismissing defendants Strong, Vazquez, Altnow, Medina, Berry and McEwen from this action.  The court will then forward to plaintiff five summonses and five USM-285 forms for completion and return.  Upon receipt of the completed forms, the court will direct the United States Marshal to initiate service of process on Moore, Alvidrez, Kitchen, Ellebracht, and DeShields.

If plaintiff elects to file a third amended § 1983 complaint in this action, plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), aff'd, 525 U.S. 299 (1999); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567; accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.   Plaintiff's claims set forth in ¶¶ 154, 155, 156, 159, 160. 161, 165, and 166 are not cognizable in a § 1983 action but must be asserted in a petition for habeas corpus;

2.   Because the only claims against defendants Scales, Cook, Borrero, Johnson, and Allen are not cognizable in this action but must be advanced in a habeas corpus petition, plaintiff's second amended complaint fails to state a cause of action against these defendants;

3.   The Clerk's Office shall send plaintiff a habeas corpus petition form;

4.   Because plaintiff's claim for terroristic threats (¶157), which is the only claim against defendants Greer, Gutierrez, and Judd, is not cognizable as a matter of law, plaintiff's second amended complaint fails to state a cause of action against these defendants;

5.   Plaintiff's second amended complaint fails to state a cause of action against defendant Tilton;

6.   The Clerk's Office shall send plaintiff a civil rights complaint form;

7.      Within **thirty (30) days** from the date of service of this order, plaintiff must either:

a.      File a third amended complaint curing the deficiencies identified by the court in this order, or

b.      Notify the court in writing that he does not wish to file a third amended complaint and wishes to proceed only against defendants Moore, Alvidrez, Kitchen, Ellebracht, and DeShields on his Eighth Amendment claims of excessive force;

4.      If plaintiff  fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

**Dated:    September 9, 2009**              _____ **/s/ Gary S. Austin** _____
                                          UNITED STATES MAGISTRATE JUDGE